IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 1:19-CR-99-TSE |
| | ) | |
| v. | ) | Status Conference: September 19, 2019 |
| | ) | |
| CHRISTOPHER WARREN LAPP, | ) | Trial Date: October 29, 2019 |
| | ) | |
| Defendant. | ) | |

**MOTION OF THE UNITED STATES FOR MENTAL
EXAMINATION TO DETERMINE EXISTENCE OF INSANITY
AND MOTION TO CONTINUE TRIAL**

The United States of America, by and through its undersigned attorneys, pursuant to 18 U.S.C. §§ 17 and 4242 and Rules 12.2(c) and 16(b) of the Federal Rules of Criminal Procedure, moves this Court for an order directing the defendant to be required to submit to an examination by an expert of the government's choosing to determine whether he was insane at the time of the offenses, and (2) directing that a report by the expert be filed with the court, pursuant to 18 U.S.C. § 4247(b) and (c). After talking with an expert for the United States, Dr. Paul Montalbano, the expert is requesting a month long extension of the trial date to obtain materials from the defense and elsewhere and to conduct his examination of the defendant.

I.  **Factual Background and Procedural History**

On November 13, 2018, Defendant entered a Wells Fargo Bank in Great Falls, Virginia, wearing a beige facemask, dark sunglasses, a baseball hat, gloves, dark pants, and a beige jacket. Surveillance footage captured him walking up to the bank teller counter while holding a Glock firearm that was partially covered with grey tape and a blue cloth. After walking up to the bank teller at the counter, Defendant handed the bank teller a note that read, "Place 20-100 in bag from counter. Pull 100's from back. No dye pack. Man outside on customers who have your

1

license plates. Know where [] live. No Bullshit." After handing the bank teller the threatening note, Defendant pointed the fully loaded firearm directly at her and verbally demanded money. Terrified, the bank teller complied and placed the money in a plastic bag that Defendant obtained from the bank. The bank teller also hit the silent alarm to notify law enforcement of the robbery. Unbeknowst to Defendant, the bank teller also placed a geolocation tracking device in the money bag which would then send signals to law enforcement of the armed robber's future location.

After obtaining the money, Defendant walked out of the bank. A startled customer cried out, "Call the police! He has a gun!" Several customers left the bank in a state of panic, including a woman known as Victim 2. Victim 2 quickly walked to her white Lexus SUV in the parking lot in order to leave the area. While Victim 2 was about to get into her car, eye witnesses saw Defendant walk up behind Victim 2 while holding the loaded firearm. After walking up from behind, Defendant demanded the car keys from Victim 2. In a state of panic, Victim 2 threw the car keys down. Defendant grabbed the car keys and sped off in her Lexus SUV.

Multiple eye witnesses of the bank robbery and armed car jacking frantically called 911 to report the crimes they witnessed. Fairfax County Police and FBI responded to the robbery and car jacking scene and quickly deployed helicopter surveillance and a K-9 unit. Defendant drove the stolen car into a neighborhood in Great Falls, Virginia where he then parked it on a side street. Helicopter surveillance footage and other surveillance cameras showed Defendant eventually entering a large residence he owned in Great Falls.

In the meantime, law enforcement on the ground was busy setting up a security perimeter in Defendant's neighborhood and worked to find the armed robber. Defendant saw law enforcement outside and informed them that he saw a neighbor matching the robber's description

in the wooded area behind his house. He further told law enforcement when he arrived home, the front and back doors of his residence were unlocked and ajar.

Law enforcement engaged in a protective sweep of Defendant's residence and saw in plain view several loose one-hundred dollar bills in the basement. Law enforcement obtained a residential search warrant and seized the stolen bank money located in a hole in the wall and on the floor in the basement. Law enforcement also recovered the fully loaded Glock firearm with tape on it inside a desk drawer and money bands belonging to Wells Fargo Bank on the floor in various parts of the residence.

During the search of Defendant's residence and Victim 2's SUV that was recovered from a nearby side street, law enforcement found the blue cloth that was used to partially cover the firearm, along with the jacket, face mask, sunglasses and hat worn by Defendant. A number of clothing articles worn by Defendant when he robbed the bank were hidden in a trash can in the Defendant's garage. During the search, law enforcement also recovered a cell phone belonging to Defendant, along with a box of ammunition matching the ammunition located in the Glock firearm.

Law enforcement took a print of the tennis shoes Defendant was wearing. The tennis shoe print matched a footprint located in the bank the day of the robbery.

During a recorded, *Mirandized* interview of Defendant, he admitted to pointing a gun at the bank teller and providing her a note. He told law enforcement he wrote the note the day before the robbery. He further admitted to putting tape on the gun to prevent the transfer of fingerprints. He admitted to putting the money in the basement. He also admitted to demanding Victim #2's car keys, taking the SUV, and later leaving the SUV on the street.

A review of the defendant's cell phone messages revealed he had multiple romantic love interests that he had been dating for several months, including a Playboy model. He vacationed with these romantic love interests and often times wired them money. Shortly before the robbery, he was working to keep his romantic love interests happy with additional money.

Defendant was initially charged by state authorities and he was ordered detained pending trial. On January 11, 2019, a criminal complaint and arrest warrant were issued out of the Eastern District of Virginia and the state dismissed their pending charges. After Defendant's Rule 5 hearing in the Eastern District of Virginia, he was ordered detained pending trial.

On March 27, 2019, the United States obtained a four count indictment against Defendant charging him with armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d), car jacking in violation of 18 U.S.C. § 2119, and two counts of using, carrying, and/or brandishing a firearm during and relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (ii).

On June 20, 2019, counsel for the defendant withdrew their representation. On June 21, 2019, new counsel, Mr. Jerry Aquino, was appointed to represent the defendant. On June 28, 2019, an unopposed motion to continue trial was filed by Defendant. This Honorable Court set the trial date for October 29, 2019.

On September 6, 2019, the defendant filed a notice pursuant to Rule 12.2 of his intention to assert a defense of insanity at the time of the offense alleged in the indictment. Further, the defendant noticed the government of his intention to introduce expert evidence relating to a mental disease or defect of any other mental condition of the defendant bearing on the issue of guilt. The defendant also waived trial by jury on that same date (which the United States does not oppose).

## II. Discussion

Upon a filing of notice of an insanity defense and a motion by the government, a court shall order that a psychiatric or psychological examination of a defendant be conducted and a report be filed with the court. 18 U.S.C. §§ 4242(a) and 4247(b) and (c). The defendant has undergone an evaluation by Jonathan Deright, Ph.D. The United States requests a psychological examination at the Alexandria Detention Center by Dr. Paul Montalbano, Ph.D ABPP (Forensic), to determine the defendant's sanity at the time of the charged defenses.

After speaking with Dr. Montalbano, the United States is respectfully seeking a month long continuance of the trial date so that Dr. Montalbano has sufficient time to conduct his evaluation and review materials that have not been provided as of today's date. The United States received a preliminary report from the defense as to their insanity defense but has not received the underlying materials of the preliminary report that are important to Dr. Montalbano's analysis, including:

1. Standard Form 86 for Christopher Lapp;
2. Alexandria Detention Center Medical Records (including records from Fairfax Detention Center), dated 11/14/18-5/10/19;
3. Austin Westin Center medical records dated 9/10/92-8/15/18;
4. BodyLogic MD medical records dated 2/7/12 +undated;
5. Quest Diagnostic medical records dated 3/21/14-4/28/18;
6. Virginia Spine Institute medical records dated 10/11/2013-8/29/18;
7. The resume of Christopher Lapp (undated);
8. The raw data underlying the dozens of tests conducted on the defendant; and
9. The notes or recordings of the defendant and his ex-wife.

Additionally, the United States has not received the final report from defense and the materials underlying that final report. Those materials are also necessary for Dr. Montalbano's analysis.

Dr. Montalbano is also seeking the following materials to aid in his examination of the defendant:

1. An interview of the defendant's ex-wife;

2. Observational records from Alexandria Detention Center;

3. Work records of the defendant;

4. An MRI and brain scan of the defendant;

5. Interviews of the defendant's family members to learn about family medical history and genetics;

6. Genetic testing of the defendant;

7. Any additional medical records not obtained by the defense's expert.

To properly assess the defendant's claim of insanity, the United States is respectfully requesting such materials and a brief one-month continuance of the trial date in order to allow Dr. Montalbano to obtain and review the materials and conduct an examination of the defendant.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

 */s/ Maureen Cain*
By: Maureen C. Cain
Natasha Smalky
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification to counsel of record.

*/s/Maureen C. Cain*
Maureen C. Cain
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Ave.
Alexandria, VA 22314-5794
Phone: (703) 299-3892
Fax: (703) 299-3980
Email: Maureen.Cain@usdoj.gov