

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 1:19-CR-99-TSE |
| ) | |
| CHRISTOPHER WARREN LAPP, ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in Count One, Count Two and Count Three of the Indictment and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt with admissible and credible evidence.

1. On November 13, 2018, in Great Falls, Virginia, within the Eastern District of Virginia, the defendant, CHRISTOPHER WARREN LAPP, by force and violence, and by intimidation, did take from the person and presence of another, namely an employee of the Wells Fargo Bank branch located at 750 Walker Road, Great Falls, Virginia, approximately $14,590 in United States currency, money belonging to, and in the care, custody, control, management, and possession of Wells Fargo Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and knowingly assaulted and put in jeopardy the life of another person, namely employees and customers of Wells Fargo Bank, by the use of a dangerous weapon, namely a firearm in violation of Title 18, United States Code, Section 2113(a) and (d).

2. On November 13, 2018, in Great Falls, Virginia, within the Eastern District of Virginia, the defendant, CHRISTOPHER WARREN LAPP, with intent to cause serious bodily

harm, did knowingly and intentionally take a motor vehicle, specifically a 2007 Lexus GX470 SUV, that had been transported, shipped, and received in interstate commerce from the person and presence of another, specifically, "L.B.," by force and violence and by intimidation in violation of Title 18, United States Code, Section 2119.

3. On November 13, 2018, within the Eastern District of Virginia, the defendant, CHRISTOPHER WARREN LAPP, did knowingly and unlawfully use, carry, and brandish a firearm, that is, a handgun, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, the November 13, 2018 bank robbery of Wells Fargo, located at 750 Walker Road, Great Falls, Virginia, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii).

4. On November 13, 2018, LAPP entered a FDIC insured, Wells Fargo Bank in Great Falls, Virginia. He entered the bank while wearing a beige face mask, sunglasses, jacket, gloves, and baseball cap.

5. LAPP approached Victim #1, a bank teller at the counter. While at the counter, LAPP handed Victim #1 a note that stated "Place 20-100 in bag from counter. Pull 100's from back. No dye pack. Man outside on customers who have your license plates. Know where [] live. No Bullshit." While at the counter, LAPP pointed a fully loaded handgun at Victim #1. The handgun was partially covered with blue cloth and tape.

6. LAPP took a plastic bag from a trashcan in the bank lobby and had Victim #1 place the money in it. LAPP instructed Victim #1 to give him more money. Victim #1 complied and gave LAPP all of the U.S. currency from the teller station drawer.

7. While LAPP was at the counter, Victim #2, a bank customer, was inside the bank.

8. After LAPP obtained the money, he exited the bank. An individual in the bank

cried out "he has a gun" and "call the police." Victim #2, hearing this information, panicked and exited the bank with some other customers.

9. Once Victim #2 stepped outside into the parking lot area, LAPP began to follow her on foot. Victim #2 quickly walked to her white Lexus SUV in the parking lot. While Victim #2 was trying to get into her car, LAPP, still carrying the loaded handgun, approached Victim #2 from behind and demanded her car keys. Victim #2, panicked, threw the keys down onto the seat of the SUV. LAPP then entered the SUV and drove off. Victim #2's SUV had been transported in interstate commerce prior to LAPP taking her vehicle.

10. The Fairfax County Police Department and FBI immediately responded to reports of the bank robbery with marked police cars and a police helicopter.

11. LAPP drove the stolen vehicle and parked it on a neighborhood street in Great Falls, Virginia. Helicopter surveillance footage and other surveillance cameras showed LAPP entering the residence he owned while carrying the bag of money shortly after the bank robbery.

12. Law enforcement went to LAPPP's residence shortly after the robbery to conduct a protective sweep of the residence. Thereafter, law enforcement obtained a search warrant on the residence and recovered most of the stolen bank money in the basement. The money was found hidden in a hole in the wall and on the floor. While in the residence, law enforcement also recovered inside a desk drawer a fully loaded Glock firearm with tape on it. A bullet was located in the chamber of the firearm. Law enforcement also found in the residence money bands belonging to Wells Fargo Bank

13. While inside LAPP's residence and while searching Victim #2's SUV, law enforcement also found the blue cloth used to partially cover the firearm, along with the jacket, face mask, sunglasses, and hat worn by LAPP during the robbery that was captured on bank

3

surveillance camera. Some of the articles of clothing worn during the armed robbery were hidden in a trash bag within LAPP's garage, including the face mask, black hat, and beige jacket.

14.  Law enforcement took a print of the tennis shoes LAPP was wearing the day of the bank robbery. The tennis shoe print matched a footprint located in the bank the day of the robbery.

15.  During a *Mirandized* interview of LAPP, he admitted to pointing a gun at the bank teller and providing her a note. He told law enforcement he wrote the note the day before the robbery. He admitted to putting tape on the gun to prevent the transfer of fingerprints. He further admitted to putting the money in the basement. He also admitted to demanding Victim #2's car keys, taking the SUV, and later leaving the SUV on the street.

16.  The acts taken by LAPP in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law and were not committed by mistake, accident, or other innocent reason.

17.  In the event that the Court finds that the defendant has breached this Plea Agreement, this Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether the Plea Agreement is presented to or accepted by a Court. Moreover, the defendant waives any rights that the defendant may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

18.  This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the government. It does not include each and every fact known to the defendant or the government, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

Respectfully submitted,

RAJ PAREKH
ACTING UNITED STATES ATTORNEY

By: Maureen C. Cain
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Christopher Warren Lapp, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Christopher Warren Lapp

I am Christopher Warren Lapp's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Joseph T. Flood, Esq.
Attorney for Christopher Warren Lapp

5